UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LATIYA T. SMITH                                CIVIL ACTION

VERSUS                                         NO. 15-6972

FLORIDA PARISHES JUVENILE                      MAGISTRATE JUDGE
JUSTICE COMMISSION ET AL.                      JOSEPH C. WILKINSON, JR.

## <u>ORDER ON MOTIONS</u>

This is an employment discrimination action brought by Latiya T. Smith, an African-American woman, against her former employer, the Florida Parishes Juvenile Detention Center (the "Center") and the Florida Parishes Juvenile Justice Commission (the "Commission") (collectively "Florida Parishes").  Smith brings claims for race and sex discrimination and constructive discharge under Title VII, 42 U.S.C. § 2000e-5, and the Louisiana Employment Discrimination Law, La. Rev. Stat. § 23:332, and for interference with and retaliation for exercising her medical leave rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611.  Complaint, Record Doc. No. 1.  This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties. Record Doc. No. 12.

Florida Parishes filed a motion for summary judgment, arguing that Smith cannot make out a prima facie case of any of her discrimination or constructive discharge claims or show any interference with or retaliation for exercising her FMLA rights.

Alternatively, Florida Parishes argues that, if plaintiff can make out a prima facie case of any of her claims, she has no evidence to rebut Florida Parishes' legitimate, non-discriminatory, non-retaliatory reasons for its actions. The motion is supported by two declarations under penalty of perjury, verified documents from plaintiff's personnel file, her answers to interrogatories and a Statement of Undisputed Material Facts. Record Doc. No. 16. Smith filed a timely memorandum in opposition, supported by her own declaration under penalty of perjury, her charge of discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), and a response to defendants' Statement of Undisputed Material Facts. Record Doc. No. 24. Four other declarations under penalty of perjury and other exhibits that she submitted are largely or entirely irrelevant to the issues in this case.

Having considered the complaint, the record, the submissions of the parties and the applicable law, **IT IS ORDERED** that the motion is GRANTED for the following reasons.

## I.    THE UNDISPUTED MATERIAL FACTS

The competent evidence establishes the following material facts, which are accepted as undisputed for purposes of defendants' summary judgment motion. The Commission operates the Center, which is a juvenile detention facility. Smith began working at the Center in 2008 and was an Assistant Shift Supervisor from 2011 until she resigned on March 22, 2015.

2

On October 21, 2014, Russell Sanders, the Center's Director of Operations, received an anonymous letter alleging that Smith had engaged in various misconduct, including sending "emails and videos (sexual content)" by email or over the internet "from Ms. Smith's charter account."  Defendants'  Exh. A-2, anonymous letter at p. 2. When Sanders investigated the letter's allegations, "a pornographic slideshow and video recordings were discovered on the Center's server that Ms. Smith had taken and sent to others on her work phone and through her work e-mail, and at least one such instance was recorded and sent while Ms. Smith was on duty at the Center."  Defendants'  Exh. A, declaration under penalty of perjury of Russell Sanders at ¶ 8; Defendants'  Exh. C, declaration under penalty of perjury of Joseph Dominick, the Center's Facility Manager and Director of Female Services, at ¶ 12.

Sanders and Dominick consulted with the Center's management group, Executive Director Tom Jarlock and Director of Administration Steven Happel, about the images on the server.  All four directors agreed that "Smith's egregious violations of the Center's rules of conduct and ethics warranted her termination."  Defendants'  Exh. A at ¶ 38; Defendants'  Exh. C at ¶ 15.

Sanders and Dominick confronted Smith on October 23, 2014 about the images. She admitted that she had used her work-issued cell phone and/or personal e-mail to send the images and videos in 2011, including on one day when she was working.  She did not know that the images would appear or remain on the Center's server.  Defendants'  Exh.

3

A-6, Employee Rule Violation Report dated October 23, 2014.  Smith confirmed these admissions in her declaration under penalty of perjury submitted in opposition to defendants' summary judgment motion.  Plaintiff's Exh. 10, declaration under penalty of perjury of Latiya Smith at ¶¶ 19, 21-22.

Sanders and Dominick urged Smith to resign on October 23, 2014 to avoid being terminated, but she refused and opted to use the Center's disciplinary program.  Sanders issued an Employee Rule Violation Report that day, charging Smith with aggravated malfeasance and general misconduct, specifically for using her Florida Parishes e-mail account to send the "pornographic slideshow, pornographic videos, and numerous pornographic images to her personal e-mail and to two other recipients" on several occasions.  Defendants' Exh. A-6 at pp. 1, 3.  Sanders recommended termination.  Id. at p. 3.

Plaintiff's various allegations that the images were discovered during a search of the server conducted for a different reason unrelated to her claims in this case (which, ironically, if true, negates any claim that race- or sex-based animus motivated the search); that she was taking a break when she recorded a video at her workplace; and that defendants' policies in 2011 did not prohibit personal use of a work-issued cell phone are not material fact disputes.  The relevant and undisputed facts are that the images were discovered on the server, Smith admitted making and sending them, and her disciplinary charge was based on sending pornography, not personal use of a cell phone.

4

After Smith refused to resign, the upper management group decided that they had to protect the Center's network from her, so they took away her work cell phone and suspended her access to the Center's network.  Without such access, Smith was required to work alongside her supervisor, but otherwise continued her regular duties.  Defendants' Exh. A at ¶¶ 39-41; Defendants' Exh. C at ¶¶ 28-30.

From that point forward, the upper management group "thought it best that contact between us and Ms. Smith should be kept to a minimum to avoid confrontation and minimize unpleasantness at work.  Ms. Smith continued to work as usual with her supervisors," and she was not demoted or given tasks below her position.  Defendants state that "[i]t was awkward when contact between [Sanders, Dominick or other members of] the management group occurred."  Defendants' Exh. A at ¶¶ 42-44; Defendants' Exh. C at ¶¶ 31-33.

Smith left work and applied for FMLA leave on October 31, 2014.  She submitted a certification form to defendants on November 19, 2014, certifying that she had a health condition warranting medical leave.  Defendants initially sought a second medical opinion, but withdrew their request and granted plaintiff's request for FMLA leave.  The evidence does not contain the dates of these events, but plaintiff's complaint states that the Center requested a second opinion on Friday, November 21 and withdrew its request and approved her leave on December 1, 2014, the Monday after the Thanksgiving holiday.  The decision to seek a second opinion did not delay Smith's leave in any way.

5

She returned to work on January 8, 2015 and continued to perform her regular job duties without any demotion, loss of pay or reassignment until she resigned.

The ad hoc disciplinary review committee met with Smith and her attorney to consider the Employee Rule Violation Report on January 14, 2015. The committee decided that plaintiff's conduct documented in the report did not conform to the Center's mission, but that termination was not appropriate because of the long passage of time since the pornographic images entered the Center's server. The committee instead issued a "Job at Risk letter," stating that Smith would face termination if similar or greater misconduct occurred within one year. Defendants' Exh. A at ¶ 53; Defendants' Exh. A-9, letter dated February 9, 2015. The committee ordered that plaintiff's cell phone and network access be restored the next work day, which was done.

According to Sanders and Dominick, the management group members "were disappointed by the ad hoc committee's decision, because we thought Ms. Smith should have been fired, but we continued to minimize unpleasantness by avoiding direct contact with her in this admittedly awkward situation." Defendants' Exh. A at ¶ 55; Defendants' Exh. C at ¶ 42. Smith argues that a disputed issue of material fact exists whether her work environment in which her upper level managers avoided her was merely "awkward," as defendants assert, or was actually "hostile or toxic," as she alleges. Her only evidence in support of this argument is her declaration under penalty of perjury in her EEOC charge that, after she returned to work from FMLA leave on January 8, 2015:

"Upper management would not speak to me.  If I would enter a room, Mr. Sanders would leave.  This treatment of exclusion went on for weeks."  Plaintiff's Exh. 14, EEOC charge filed on September 16, 2015 at p. 2.  This statement reiterates the facts that Sanders and Dominick have admitted.

On March 12, 2015, Smith gave defendants two weeks notice of her resignation.  Her last day of work was March 22, 2015.  Id.

II.    ANALYSIS

A.    Legal Standards for Summary Judgment Motion

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

(1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> > (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> > (3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
> > (4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find

for the nonmoving party based on the evidence presented. Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23; accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

9

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); <u>accord</u> <u>Duron v. Albertson's LLC</u>, 560 F.3d 288, 291 (5th Cir. 2009).

B.   <u>Race and Sex Discrimination Claims</u>

In an employment discrimination case under both Title VII and Louisiana law,[1] plaintiff has the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). A plaintiff establishes a <u>prima facie</u> case of race- or sex-based discrimination by demonstrating that she

> "(1) is a member of a protected class; (2) was qualified for the position; (3) was <u>subject to an adverse employment action</u>; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably."

<u>Standley v. Rogers</u>, No. 16-51092, 2017 WL 958318, at *1 (5th Cir. Mar. 10, 2017) (quoting <u>Bryan v. McKinsey & Co.</u>, 375 F.3d 358, 360 (5th Cir. 2004)) (emphasis added); <u>accord</u> <u>Buckhanan v. Shinseki</u>, 665 F. App'x 343, 349 (5th Cir. 2016) (citing

---

[1]<u>Turner v. Kan. City S. Ry.</u>, 675 F.3d 887, 891 n.2 (5th Cir. 2012) (citing <u>Lawrence v. Univ. of Tex.</u>, 163 F.3d 309, 311 (5th Cir. 1999); <u>Knapper v. Hibernia Nat'l Bank</u>, 49 So. 3d 898, 902 n.11 (La. App. 4th Cir. 2010)).

Haire v. Bd. of Supervisors, 719 F.3d 356, 363 (5th Cir. 2013)).  If plaintiff establishes a prima facie case, defendant must produce evidence that its employment decision was based on a legitimate non-discriminatory reason.  If defendant carries its burden, the burden shifts back to plaintiff to prove that the proffered reasons were a pretext for discrimination.  Turner, 675 F.3d at 892 (quotation omitted).

Smith cannot establish a prima facie case of discrimination because she was not subject to an adverse employment action.  Adverse employment actions in the context of discrimination claims "consist of ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating.  [A]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action. . . .  [A] mere inconvenience or an alteration of job responsibilities will not suffice."  Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014) (quotation and citations omitted).

None of defendants' actions resulted in any loss in compensation, duties or benefits.  Smith was not terminated.  She suffered only inconvenience in the loss of her cell phone and network access, receipt of a Job at Risk letter and upper level managers' avoidance of direct contact with her.  As a matter of law, these are not adverse employment actions and she cannot establish a prima facie case of discrimination based on any of them.  See King v. Louisiana, 294 F. App'x 77, 85-86 (5th Cir. 2008) ("[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests,

11

and unfair treatment do not constitute actionable adverse employment actions"); <u>Ellis v. Principi</u>, 246 F. App'x 867, 870-71 (5th Cir. 2007) (citing <u>Washington v. Veneman</u>, 109 F. App'x 685, 689 (5th Cir. 2004)) (A supervisor's decisions to give plaintiff less favorable work assignments, deny a performance award and require her to use leave time to compensate for tardiness are not adverse employment actions.  Decisions "to enforce the employer's protocol" regarding such issues "can hardly be considered an ultimate employment decision."); <u>Breaux v. City of Garland</u>, 205 F.3d 150, 158 (5th Cir. 2000) (criticism, oral threats, abusive remarks and threats of termination not adverse employment actions); <u>Burgess v. Cleco Corp.</u>, No. 11-1704, 2013 WL 673481, at *6 (W.D. La. Feb. 22, 2013), <u>aff'd</u>, 539 F. App'x 454 (5th Cir. 2013) (offensive conduct, verbal reprimands and unfair treatment are not actionable adverse employment actions); <u>Liddell v. Northrop Gumman Shipbldg., Inc.</u>, 836 F. Supp. 2d 443, 457 (S.D. Miss. 2011) (disciplinary slip placed in personnel file that did not result in reduced wages, termination, layoff or any other ultimate employment action was not actionable); <u>Montgomery v. Sears Roebuck & Co.</u>, 720 F. Supp. 2d 738, 744-45 (W.D. La. 2010) (no adverse action when plaintiff was offered a demotion at the same pay rate, which she refused; remained in her job without any pay reduction; and received written disciplinary notices); <u>Lopez v. Kempthorne</u>, 684 F. Supp. 2d 827, 885 (S.D. Tex. Jan. 14, 2010) ("denial of telecommuting agreement, denial of use of an entrance door, close monitoring by her supervisor, changes in her drafts of engagement letters, delayed award, assignment

to a small office, denial of a larger and better located office, and denial of work requests" not adverse employment actions).

Smith admittedly resigned. However, "a resignation may still constitute an adverse employment action 'if the resignation qualifies as a constructive discharge. To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." Brown v. Liberty Mut. Grp., Inc., 616 F. App'x 654, 657 (5th Cir. 2015) (quoting Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001)). "This is an objective standard, and what is subjectively intolerable to a particular employee may strike a court or jury as merely unpleasant." Green v. Brennan, 136 S. Ct. 1769, 1789 (2016) (Alito, J., concurring in the judgment) (citing Pa. State Police v. Suders, 542 U.S. 129, 141 (2004)); accord Noack v. YMCA, 418 F. App'x 347, 352 (5th Cir. 2011) (citing Stover v. Hattiesburg Pub. Sch. Dist., 549 F.3d 985, 991 (5th Cir. 2008); Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 481 (5th Cir. 2008)).

"Part of an employee's obligation to be reasonable is an obligation not to assume the worst and not to jump to conclusions too fast." Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307, 310 (5th Cir. 1987) (quotation omitted); accord Brandon v. Sage Corp., 808 F.3d 266, 272 (5th Cir. 2015) (citing Aryain, 534 F.3d at 481-82). In other words, plaintiff must complain of the unpleasant working conditions and give her employer a reasonable time to remedy them before she concludes that the employer is

acting deliberately to force her resignation.  Hinojosa v. CCA Props. of Am., LLC, 400 F. App'x 920, 923-24 (5th Cir. 2010); Haley v. Alliance Compressor LLC, 391 F.3d 644, 652 (5th Cir.2004); McKethan v. Tex. Farm Bureau, 996 F.2d 734, 741 (5th Cir. 1993).

> In determining whether a reasonable employee would have felt compelled to resign, [the Fifth Circuit has] considered whether the following factors are present:
>> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Matherne v. Ruba Mgmt., 624 F. App'x 835, 841 (5th Cir. 2015) (quoting Brown, 237 F.3d at 566).  "In addition, a plaintiff may be constructively discharged if the employer gives the employee an ultimatum to quit or be fired.  However, in these ultimatum cases, courts have required something beyond the employee's subjective belief that termination was inevitable."  Perret v. Nationwide Mut. Ins. Co., 770 F.3d 336, 338-39 (5th Cir. 2014) (citations omitted).

"Constructive discharge is an 'aggravated' form of discrimination involving truly 'intolerable' working conditions that leave an employee no choice but to resign."  Green, 136 S. Ct. at 1789 (Alito, J., concurring in the judgment) (quoting Suders, 542 U.S. at 146-47).  "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.  Discrimination alone, without aggravating

factors, is insufficient for a claim of constructive discharge . . . ." <u>Brown</u>, 237 F.3d at 566 (citations omitted); <u>accord</u> <u>Matherne</u>, 624 F. App'x at 841.

Smith fails in her burden to produce competent summary judgment evidence of a genuine fact issue that she was constructively discharged. Although Sanders and Dominick gave plaintiff the option to resign in lieu of termination and recommended her termination on October 23, 2014 when she did not resign, she elected to contest the Employee Violation Report through the ad hoc disciplinary review committee. The committee determined on January 14, 2015 that termination was not warranted, issued a Job at Risk letter instead and directed plaintiff's supervisors to restore her cell phone and access to defendants' computer network. Her cell phone and network access were restored the next day. No further discipline was imposed during the eight weeks that she remained on the job before tendering her resignation.

Plaintiff has proffered <u>no evidence</u> that a reasonable employee would have felt compelled to resign in these circumstances. She was not demoted or reassigned to menial or degrading work or under a younger supervisor, and suffered no reduction in salary or job responsibilities. She was subjected to discipline for admittedly having used her employer-issued cell phone to send pornographic images, which defendants found on their network server. There is no evidence that Smith was badgered, harassed or humiliated to encourage her resignation. She left work and applied for FMLA leave on October 31, 2014, eight days after the Employee Violation Report was issued. She

returned to work on January 8, 2015 and the ad hoc committee rendered its decision eight days later on January 14, 2015.   After she declined to resign and sought ad hoc disciplinary committee review, her cell phone and network access were removed as interim disciplinary measures and she was assigned to work with another supervisor so she <u>could</u> carry out her job duties and continue to work pending the review.   Her cell phone and network access were immediately restored after the review committee's order. She does not argue that the Job at Risk letter was motivated by discrimination.

Upper level managers did nothing else except avoid direct contact with Smith during those 16 days when she was actually at work (even if the court assumes that she had no days off during that period) before the review committee's decision and during the eight weeks that plaintiff worked afterwards, which Russell and Dominick have explained was done to avoid any unpleasant confrontations in light of their termination recommendation.   Smith has proffered neither evidence to dispute that reason nor evidence that she complained and gave her managers an opportunity to rectify her complaints before resigning.

Smith's allegation in her EEOC charge of discrimination that "I was advised by my doctor to seek other employment if I wanted my health to improve," Plaintiff's Exh. 14, is inadmissible hearsay, extremely vague and thoroughly subjective.  She cites no cases in which a court has found that working conditions were so intolerable that a reasonable employee would have felt compelled to resign simply because upper level

managers avoided contact with her, but she was still able to fulfill the unchanged duties of her position and received her unchanged compensation. In the absence of a constructive discharge, plaintiff cannot show that she was subject to an adverse employment action and cannot establish a prima facie case of discrimination.

Even if Smith could make out a prima facie case, defendants have satisfied their burden to produce admissible, legitimate, non-discriminatory reasons for their actions. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000); Turner, 675 F.3d at 900; Joseph v. City of Dallas, 277 F. App'x 436, 439 (5th Cir. 2008); Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). Plaintiff admitted that she had used her work-issued cell phone and/or personal e-mail to send the images and videos in 2011, including on one day when she was working. Smith has proffered only conclusory argument, but no competent summary judgment evidence, to carry her burden to show that defendants' actions were actually motivated by intentional race or sex discrimination. She does not even mention race or sex discrimination in her declaration. "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" U.S. ex rel. Farmer v. City of Houston, 523 F.3d 333, 337 (5th Cir. 2008) (quoting TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002)). Plaintiff's mere subjective beliefs fail to establish that a material fact issue is in dispute. Chambers v. Sears Roebuck & Co., 428 F. App'x 400, 419 n.54 (5th Cir. 2011); Ontiveros v. City

17

of Rosenberg, 564 F.3d 379, 383 (5th Cir. 2009); Strong v. Univ. Health Care Sys., L.L.C., 482 F.3d 802, 807 (5th Cir. 2007); Roberson v. Alltel Info. Servs., 373 F.3d 647, 654 (5th Cir. 2004).

Accordingly, no genuine issue of material fact is presented as to plaintiff's race and sex discrimination claims and defendants are entitled to summary judgment as a matter of law on these claims.

C.     FMLA Claims

Smith claims both interference with her right to take FMLA leave and retaliation for having taken such leave. The competent summary judgment evidence fails to show a material fact issue that either interference or retaliation occurred.

> The FMLA permits an employee to take up to twelve weeks of medical leave for [her] own serious medical condition or for the care of a family member with a serious medical condition. The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave. The statute also makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.

Lanier v. Univ. of Tex., 527 F. App'x 312, 316 (5th Cir. 2013) (citing 29 U.S.C. §§ 2612(a)(1), § 2615(a)(1), 2615(a)(2)). The employer may require the employee to support her request for leave with a certification issued by her health care provider. 29 U.S.C. § 2613(a)).

FMLA interference and retaliation claims are distinct claims. A major distinction between these two types of claims is that interference claims do

> not require a showing of discriminatory intent, whereas retaliation claims
> do.  An interference claim is the deprivation of an FMLA entitlement while
> a retaliation claim is the punishment exacted for the plaintiff's exercise of
> an FMLA right. . . .  To establish a prima facie interference case, Plaintiff
> must show that (1) he was an eligible employee, (2) Defendant was an
> employer subject to the FMLA's requirements, (3) [plaintiff] was entitled
> to leave, (4) he gave proper notice of the intention to take FMLA leave, and
> (5) Defendant <u>denied the benefits to which [plaintiff] was entitled under the
> FMLA</u>.

Crain v. Schlumberger Tech. Co., No. 15-1777, 2017 WL 713673, at *2-3 (E.D. La.

Feb. 23, 2017), appeal filed, No. 17-30170 (5th Cir. Mar. 6, 2017) (quotation omitted)

(citing 29 U.S.C. §§ 2601, 2615; Lanier, 527 F. App'x at 316; Kendall v. Walgreen Co.,

No. A-12-CV-847-AWA, 2014 WL 1513960, at *4, 5 (W.D. Tex. Apr. 16, 2014))

(emphasis added).

      Smith left work and applied for FMLA leave on October 31, 2014.  She submitted

a FMLA certification form to defendants on November 19, 2014.  Defendants did not

deny her request, but asked for a second medical opinion before approving it.  The

FMLA expressly grants the employer that right.

> In any case in which the employer has reason to doubt the validity of the
> certification provided . . . , the employer may require, at the expense of the
> employer, that the eligible employee obtain the opinion of a second health
> care provider designated or approved by the employer concerning any
> information certified under subsection (b) of this section for such leave.

Id. § 2613(c)(1); see Rhoads v. Fed. Deposit Ins. Corp., 257 F.3d 373, 386 (4th Cir.

2001) ("the plain language of the statute indicates that an employer who questions the

validity of a certification has the option of seeking a second and third opinion"); Porter

v. N.Y. Univ., No. 99 CIV. 4693 (TPG), 2003 WL 22004841, at *6-7 (S.D.N.Y. Aug. 25, 2003), aff'd, 392 F.3d 530 (2d Cir. 2004) (same).

Defendants subsequently withdrew their request for a second opinion and granted Smith's FMLA leave request.  Plaintiff has not cited, and my research has not located, any decisions that support a claim that an employer who exercised its statutory right to seek a second opinion, which in no way delayed the employee's leave, somehow interfered with an employee's leave rights.  Smith's interference claim fails as a matter of law because defendants never denied her the benefits to which she was entitled under the FMLA.

Smith also claims that defendants retaliated against her for having taken leave.

> Retaliation claims under both Title VII and the FMLA . . . are analyzed under the McDonnell Douglas burden-shifting framework.  That framework requires the employee first to set out a prima facie case of retaliation, which she may do by establishing that:  (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) a causal link exists between her protected activity and the adverse action.  The Supreme Court, however, in Univ. of Texas Sw. Med. Ctr. v. Nassar, . . . recently held that to satisfy the "causal link" requirement of a Title VII retaliation claim, the employee must provide substantial evidence that "but for" exercising protected rights, she would not have [suffered adverse employment action]. . . .  Neither this Court, nor the Supreme Court, has decided whether the heightened "but for" causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims.

Wheat v. Florida Par. Juvenile Justice Comm'n, 811 F.3d 702, 705-06 (5th Cir. 2016)

(citing Univ. of Tex. v. Nassar, 133 S. Ct. 2517, 2533 (2013)) (emphasis added; see also

Smith v. Bd. of Supervisors, 656 F. App'x 30, 33 n.4 (5th Cir. 2016) (noting that circuits are split on whether Nassar requires a Title VII plaintiff "to show but-for causation as part of her prima facie case of retaliation, or only at the third step of the McDonnell Douglas framework to rebut an employer's legitimate stated reason for the adverse employment action" and declining to decide the issue).

In the instant case, even under a causation standard less stringent than the "but for" standard, plaintiff has failed to produce any evidence to create a material fact issue that a causal link exists between her protected activity of taking FMLA leave and defendants' actions.  The only allegedly retaliatory actions are the same ones that defendants imposed before Smith took FMLA leave:  (1) interim disciplinary measures based on her admitted violations of defendants' conduct policies, consisting of the losses of her cell phone and network access and the requirement that she work with another supervisor, and (2) the upper level managers' avoidance of direct contact with her.  Obviously, defendants' actions that occurred before plaintiff exercised her FMLA rights cannot be retaliatory for that protected activity.  Because the disciplinary conduct began before Smith requested FMLA leave and continued unchanged when she returned from leave until the cell phone, network access and supervisory requirements were discontinued eight calendar days after she returned, she cannot show any causal link between her taking leave and the disciplinary actions.  Admitted violations of company policy leading to disciplinary

action are not pretexts for retaliation.  Rodriguez v. Eli Lilly & Co., 820 F.3d 759, 766 (5th Cir. 2016).

Even if close timing could establish the requisite causal link between the upper level managers' continued avoidance of contact with Smith after she returned from FMLA leave until she resigned eight weeks later, see Porter v. Houma Terrebonne Hous. Auth. Bd., 810 F.3d 940, 948 (5th Cir. 2015) ("temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage"), she fails to provide evidence of any disputed fact issue that might necessitate trial concerning whether she was subject to a materially adverse employment action.

In the context of a Title VII retaliation claim, "an adverse employment action is an action that is 'materially adverse' that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Thibodeaux-Woody v. Houston Cmty. Coll., 593 F. App'x 280, 285 (5th Cir. 2014) (quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006))).  "To qualify as an 'adverse employment action' for purposes of a FMLA retaliation claim, the action must be 'materially adverse,' meaning that it 'would dissuade a reasonable employee from exercising his rights under the FMLA.'"  Thompson v. Total Petrochems. & Ref. USA, Inc., No. 4:15-CV-01204, 2016 WL 7742798, at *3 (S.D. Tex. Aug. 9, 2016) (quoting Lushute v. Louisiana, 479 F. App'x 553, 555 (5th Cir. 2012)); accord Millea v. Metro-North R.R., 658 F.3d 154,

164 (2d Cir. 2011) (citing <u>Breneisen v. Motorola, Inc.</u>, 512 F.3d 972, 979 (7th Cir. 2008);

<u>Metzler v. Fed. Home Loan Bank</u>, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006); <u>McArdle</u>

<u>v. Dell Prods., L.P.</u>, 293 F. App'x 331, 337 (5th Cir. 2008); <u>DiCampli v. Korman</u>

<u>Cmties.</u>, 257 F. App'x 497, 500-01 (3d Cir. 2007); <u>Csicsmann v. Sallada</u>, 211 F. App'x

163, 167-68 (4th Cir. 2006)).

 As discussed previously, plaintiff fails to show any genuine fact issue that she was

constructively discharged.  Thus, it is undisputed that she resigned voluntarily after only

two months of post-FMLA-leave managers' conduct.  There is no competent summary

judgment evidence that the lack of contact "made her job 'objectively' worse," <u>Wheat</u>,

811 F.3d at 709 (citing <u>Burlington</u>, 548 U.S. at 71), or that it would have dissuaded a

reasonable employee from taking FMLA leave.  Actions such as being "chastised by

superiors and ostracized by co-workers" do not, "[a]s a matter of law, . . . rise to the level

of material adversity but instead fall into the category of 'petty slights, minor

annoyances, and simple lack of good manners' that the Supreme Court has recognized

are not actionable retaliatory conduct." <u>Stewart v. Miss. Transp. Comm'n</u>, 586 F.3d 321,

331-32 (5th Cir. 2009).  Nor is heightened scrutiny by supervisors materially adverse, as

a matter of law.  <u>Magiera v. City of Dallas</u>, 389 F. App'x 433, 437-38 (5th Cir. 2010);

<u>see also</u> <u>King</u>, 294 F. App'x at 85 (citations omitted) (Rudeness and unfriendliness by

a supervisor and a co-worker, "unpleasant work meetings, verbal reprimands, improper

work requests and unfair treatment do not constitute adverse employment actions as . . .

retaliation."); <u>Earle v. Aramark Corp.</u>, 247 F. App'x 519, 524 (5th Cir. 2007) (disciplinary write-ups and micro-managing of plaintiff's performance are not materially adverse); <u>Grice v. FMC Techs. Inc.</u>, 216 F. App'x 401, 404, 407 (5th Cir. 2007) (unjustified reprimands are "trivial" and not materially adverse; plaintiff's allegation that he was watched more closely than other employees would not dissuade a reasonable employee from reporting discrimination).

Accordingly, defendants are entitled to summary judgment as a matter of law on plaintiff's FMLA claims.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED and plaintiff's claims are DISMISSED WITH PREJUDICE, plaintiff to bear all costs.  Judgment will be separately entered.

New Orleans, Louisiana, this _____30th_____ day of March, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

24